UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH HOPKINS, | NO. CV 10-00993-MAN |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| v. | |
| | AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff filed a Complaint on February 10, 2010, seeking review of the denial by the Social Security Commissioner (the "Commissioner") of plaintiff's application for a period of disability and disability insurance benefits ("DIB").[1] On January 5, 2011, the parties consented to proceed before the undersigned United States Magistrate Judge,

---

[1] Plaintiff's Complaint actually seeks review of not only the Commissioner's decision denying plaintiff's application for a period of disability and DIB but also the Commissioner's decision allegedly denying plaintiff's application for social security income ("SSI"). The Commissioner only denied plaintiff's application for a period of disability and DIB. It appears, however, that plaintiff did not apply for SSI. In fact, plaintiff's Joint Stipulation only seeks review of the Commissioner's decision denying review of plaintiff's application for a period of disability and DIB. Accordingly, the Court limits its review to the Commissioner's denial of plaintiff's application for a period of disability and DIB.

pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on November 10, 2010, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and defendant requests that the Commissioner's decision be affirmed or, alternatively, remanded for further administrative proceedings. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 78-80.) Plaintiff claims to have been disabled since April 15, 1997, due to fibromyalgia, chronic kidney disease, headaches, gastrointestinal reflux disease,[2] arthritis,[3] back and neck pain, anemia, and memory loss. (A.R. 45, 51.) Plaintiff has past relevant work experience as a receptionist.[4]

After the Commissioner denied plaintiff's claims initially and upon reconsideration (A.R. 45-49, 51-55), plaintiff requested a hearing

---

[2] In his decision, the ALJ states that plaintiff claims disability due to gastroesophageal reflux disease ("GERD"), which appears to be a more medically accurate description of this aspect of plaintiff's alleged disabilities.

[3] In his decision, the ALJ states that plaintiff claims disability due to arthralgias, which appears to be a more medically accurate description of this aspect of plaintiff's alleged disabilities.

[4] Although not discussed in the ALJ's decision, it appears that plaintiff also has past relevant work experience as an assistant manager, babysitter, clerk, and saleswoman. (*See, e.g.*, A.R. 83.)

2

(A.R. 57). On June 11, 2008, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Jeffrey A. Hartfield (the "ALJ"). (A.R. 21-42.) Vocational expert Evonne Worthington also testified. (A.R. 38-41.) On June 25, 2008, the ALJ denied plaintiff's claim (A.R. 13-20), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 5-9). That decision is now at issue in this action

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff had not engaged in substantial gainful activity from April 15, 1997, the alleged onset date of disability, through December 31, 2001, the date last insured. (A.R. 15.) The ALJ determined that plaintiff has the severe impairments of kidney stones and headaches. (*Id.*) The ALJ also determined that, through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 405.1526). (*Id.*)

After reviewing the record, the ALJ determined plaintiff's residual functional capacity ("RFC") and concluded that, "[t]hrough the date last insured, [plaintiff's] past relevant work as [a] receptionist did not require the performance of work-related activities precluded by [plaintiff's RFC]." (A.R. 20.) Accordingly, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act from April 15, 1997, through December 31, 2001. (*Id.*)
///

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not

affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; see also Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff makes the following claims: (1) the ALJ failed to give controlling weight to the opinion of plaintiff's treating physician; and (2) the ALJ failed to give clear and convincing reasons for finding plaintiff to be not credible.[5] (Joint Stipulation ("Joint Stip.") at 3-15.)

///
///
///

---

[5] Within plaintiff's second claim, plaintiff raises a third claim -- *to wit*, that the ALJ "erred in failing to find that [plaintiff's] stage 3 renal disease was a severe impairment or that it caused significant pain." (Joint Stip. at 12.) To support her claim, plaintiff cites a November 19, 2007 medical record that lists "chronic kidney disease, stage 3, mod[erate]" as one of plaintiff's current problems. (*Id.*) In pertinent part, this medical record indicates that plaintiff's stage 3 kidney disease was "noted" on January 23, 2007. (A.R. 612.) However, as defendant properly contends, plaintiff's claim refers to a condition that was noted well after the disability period at issue. (Joint Stip. at 14 n.3.) Moreover, substantial evidence supports the ALJ's determination that plaintiff only suffered from small kidney stones, which produced flank pain, during the alleged disability period. (A.R. 18.) Accordingly, plaintiff's claim related to stage 3 renal disease is without merit.

5

1. **I.  On Remand, The ALJ Must Consider The Fibromyalgia Disease Residual Functional Capacity Questionnaire Completed By Plaintiff's Treating Doctor And, To The Extent Necessary, Further Develop The Record.**

Plaintiff claims that the ALJ failed to give controlling weight to the opinion of her treating doctor, David C. Cheng, M.D. Specifically, plaintiff asserts that the ALJ improperly ignored Dr. Cheng's retrospective fibromyalgia diagnosis. (Joint Stip. at 4.)

It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d). The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant. Magallanes, 881 F.2d at 751. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended). When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

An ALJ "has a special duty to fully and fairly develop the record

and to assure that claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). Pursuant to 20 C.F.R. § 404.1512(e), the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information . . . ." *See* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (noting that "[i]f the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry").

On April 28, 2008, plaintiff's treating doctor, Dr. Cheng, completed a Fibromyalgia Disease Residual Functional Capacity Questionnaire ("questionnaire") in which he diagnosed plaintiff with fibromyalgia with an onset date of "approximately 1997." (A.R. 677-81.) Dr. Cheng also diagnosed plaintiff with chronic pain and GERD. (A.R. 677.) Significantly, Dr. Cheng opined that, as a result of plaintiff's fibromyalgia and other impairments, plaintiff would have numerous functional limitations in a competitive work situation.[6] (A.R. 679-81.)

---

[6] Specifically, Dr. Cheng opined that plaintiff: cannot walk more than half a city block without rest; can continuously sit for 30 minutes and stand for 10 minutes at one time; can sit and "stand/walk" less than two hours in an "[eight] hour working day (with normal breaks)"; needs to include periods of walking around during an eight hour working day; needs a job that permits shifting positions at will and unscheduled breaks; should elevate her legs to heart level when seated for prolonged periods of time; can occasionally lift and carry less than 10 pounds; has significant limitations in doing repetitive reaching, handling or fingering; should spend no more than two percent of an eight hour day bending and twisting at the waist; and can expect to be absent more than three days a month due to her impairments. (A.R. 679-81.)

7

As a threshold matter, it is unclear whether the ALJ reviewed Dr. Cheng's questionnaire before issuing his decision. At the hearing, after plaintiff's counsel referenced an unspecified medical record completed by Dr. Cheng which included "trigger points and the diagnosis of fibromyalgia and all its symptoms," the ALJ stated that he had "looked at it," had "see[n] references to fibromyalgia," but had not "see[n] [any] testing." (A.R. 37-38.) While both parties contend that the ALJ's comments at the hearing were made with reference to Dr. Cheng's questionnaire, the questionnaire was not made part of the record until November 19, 2009 -- approximately 17 months *after* the ALJ issued his decision. (A.R. 9.) In fact, at the time of the hearing and the ALJ's decision, it appears that the record contained only a partial summary of Dr. Cheng's questionnaire, which noted that plaintiff has had "chronic pain since 1998, fibromyalgia, spinal stenosis" and "exhibit[ed] [musculoskeletal] tenderness (at nearly all trigger points except medial knees)." (A.R. 603-04.) Significantly, Dr. Cheng's questionnaire -- as opposed to the partial summary of the questionnaire -- includes not only a clear retrospective fibromyalgia diagnosis but also Cheng's opinion regarding plaintiff's functional limitations.

If the ALJ reviewed Dr. Cheng's questionnaire before issuing his decision, the ALJ's failure to state any reason for rejecting it constitutes error. In pertinent part, "[r]etrospective diagnoses by treating physicians and medical experts, . . . are . . . relevant to the determination of a continuously existing disability with onset prior to expiration of insured status." Flaten v. Sec'y of Health & Hum. Servs., 44 F.3d 1453, 1461 n.5 (9th Cir. 1995); *see also* Lester, 81 F.3d at 832 (noting that "medical evaluations made after the expiration of

[plaintiff's] insured status are relevant to an evaluation of the preexpiration condition")(citation omitted).

In his decision, the ALJ notes that plaintiff's records "mention a history of fibromyalgia by report," but states "[t]here are no objective findings or other clinical indications of fibromyalgia or diagnosis of fibromyalgia as a current condition, during the period from the alleged onset date through the date last insured." (A.R. 19.) Contrary to the ALJ's finding, however, Dr. Cheng diagnosed plaintiff with fibromyalgia with an onset date of approximately 1997, and assessed plaintiff with numerous functional limitations as a result of her fibromyalgia and other impairments. Dr. Cheng's diagnosis thus relates back to the disability period at issue and is relevant to plaintiff's disability determination.

Moreover, fibromyalgia is not well-understood and difficult to diagnose. *See* Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004)(overruled on other grounds in Abatie v. Alta Health & Life Ins., 458 F.3d 955, 970 (2006)(noting that "fibromyalgia's cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective"); Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) ("fibromyalgia . . . . [is an] elusive and mysterious disease"). "The principal symptoms [of fibromyalgia] are 'pain all over,' fatigue, disturbed sleep, stiffness, and . . . multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." Rollins v. Massanari, 261 F.3d

853, 855 (9th Cir. 2001)(*quoting* Sarchet, 78 F.3d at 307.) Because of the nature of fibromyalgia, its diagnosis necessarily hinges on a claimant's subjective symptoms; "there are no laboratory tests for the presence or severity of fibromyalgia." Jordan, 370 F.3d at 872; Sarchet, 78 F.3d at 306 (same). Accordingly, given the nature of fibromyalgia, the ALJ's failure to give *any* reason, let alone a specific and legitimate reason, for rejecting the opinion of plaintiff's treating doctor constitutes error.[7]

Further, if the ALJ only reviewed the summary of Dr. Cheng's questionnaire before issuing his decision, the ambiguity in the record surrounding plaintiff's fibromyalgia diagnosis should have triggered the ALJ's duty to develop the record further. At the hearing, after presumably reviewing the summary of Dr. Cheng's questionnaire, the ALJ stated that he saw references to fibromyalgia, but did not see any testing. (A.R. 37.) It is well established that, if a medical report does not contain all the necessary information or, alternatively, if an

---

[7] Although defendant proffers several reasons to explain the ALJ's failure to provide specific and legitimate reasons for rejecting Dr. Cheng's questionnaire, those reasons are not persuasive. Contrary to defendant's contention, Dr. Cheng's retrospective fibromyalgia diagnosis and assessment of plaintiff's functional limitations are relevant to both the disability period at issue and the ALJ's disability determination. An ALJ must explain why significant and probative evidence is rejected, and the ALJ's failure to discuss his apparent rejection of Dr. Cheng's opinion thus constitutes error. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)(noting that an ALJ must explain why "'significant probative evidence has been rejected'") (citation omitted). Further, the other reasons proffered by defendant constitute post hoc rationalizations, which the Court cannot consider. *See, e.g.*, Orn, 395 F.2d at 630 (noting that the court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"); *see also* Connett, 340 F.3d at 874. Lastly, contrary to defendant's contention, the ALJ's error cannot be deemed harmless, because the Court cannot confidently conclude, as required, that the error is inconsequential to the ultimate nondisability determination. Stout, 454 F.3d at 1055.

ALJ needs to know the basis of a doctor's opinion, the ALJ has an affirmative duty to conduct an appropriate inquiry. Smolen, 80 F.3d at 1288. Having not seen any testing, the ALJ should have recontacted Dr. Cheng and developed the record further. A failure to do so would constitute error. This is especially true since the record contains various reports during the relevant disability period in which fibromyalgia is reported, assessed, and even, questioned.[8] Moreover, since the summary of Dr. Cheng's questionnaire clearly states that plaintiff has been with "chronic pain since 1998, fibromyalgia, [and] spinal stenosis," the ALJ, at a minimum, should have provided a specific and legitimate reason for rejecting the opinion of plaintiff's treating doctor. The ALJ's failure to do so also constitutes error.

Even assuming *arguendo* that the ALJ did not commit error, however, the Appeals Council committed error by summarily rejecting Dr. Cheng's

---

[8] In his decision, the ALJ notes that the record contains "a history of fibromyalgia by report," but does not contain "objective findings or other clinical indications of fibromyalgia, or diagnosis of fibromyalgia as a current condition, during the period from the alleged onset date through the date last insured." (A.R. 19.) It is unclear whether substantial evidence supports this assertion. First, as discussed *supra*, Dr. Cheng diagnosed plaintiff with fibromyalgia dating back to 1997 -- the relevant disability period at issue. Second, while it is true that the medical record contains a history of fibromyalgia by report, the medical records also contain a current assessment of fibromyalgia. (*See, e.g.,* A.R. 171 (3/28/97 -- history of fibromyalgia reported *and* current assessment of fibromyalgia noted.)) The record also contains a July 28, 1998 report in which "fibromyalgia" is noted (A.R. 444) and an August 20, 1998 report in which "Fibromyalgia – referral to Rheumatology" is noted (A.R. 447). Thus, the question of whether plaintiff suffered from fibromyalgia was raised during the relevant period (A.R. 445, 450), and it appears that plaintiff was referred to Rheumatology for further testing (A.R. 447, 450, 454). Records regarding that testing, if it occurred, do not appear to be in the record. In view of the ambiguity surrounding the timing of plaintiff's fibromyalgia diagnosis and the onset date of that disease, the ALJ should further develop the record, by contacting Dr. Cheng, regarding these issues.

11

questionnaire.  Pursuant to 20 C.F.R. § 404.970(b), the Appeals Council is required to consider new evidence submitted to it if that new evidence relates to the period before the ALJ's decision and if the new evidence changes the weight of the evidence in the record.  On August 22, 2008 plaintiff's counsel wrote a letter to the Appeals Council in which she contended, *inter alia*, that the ALJ failed to discuss Dr. Cheng's questionnaire and his retroactive fibromyalgia diagnosis.  (A.R. 163-64.)  Plaintiff's counsel also included a copy of the complete questionnaire and supporting medical documents for the Appeals Council's review.  (*Id.*)  After considering the reasons proffered in the letter as well as the materials submitted, the Appeals Council found that the "information does not provide a basis for changing the [ALJ's] decision."  (A.R. 5-6.)  The Appeals Council specifically noted that it had looked at Dr. Cheng's questionnaire, but it summarily dismissed it, incorrectly concluding that:  "This new information is about a later time. . . . [and t]herefore, it does not affect the decision about whether [plaintiff was] disabled at the time [plaintiff was] last insured for disability benefits."  (A.R. 6.)  Contrary to the Appeals Council's finding, Dr. Cheng's opinion is relevant to the determination of whether plaintiff was disabled during the relevant disability period at issue, because Dr. Cheng diagnosed plaintiff with fibromyalgia dating back to "approximately 1997" -- the disability time period at issue. Additionally, Dr. Cheng opined that plaintiff had numerous functional limitations as a result of her fibromyalgia and other impairments, and if there was any question regarding the extent to which such limitations existed during the relevant time period, then further development of the record should have been ordered.  Accordingly, the Appeals Council's reason for rejecting Dr. Cheng's questionnaire was improper and, thus,

12

constitutes error.[9]

**II. The ALJ Must Reconsider Plaintiff's Credibility.**

Based on the foregoing, there are several matters that the ALJ needs to review and reconsider on remand. As a result, the ALJ's conclusion regarding plaintiff's credibility may change. Indeed, Dr. Cheng's retrospective fibromyalgia diagnosis may support plaintiff's complaints and alleged limitations which the ALJ deemed to be "out of proportion to the objective findings." (A.R. 19.) Accordingly, the Court does not reach plaintiff's second claim -- *to wit*, that the ALJ erred in finding plaintiff to be not credible. To properly review and reconsider this issue, the ALJ needs to consider Dr. Cheng's questionnaire and, to the extent necessary, develop the record further to resolve any ambiguity surrounding plaintiff's fibromyalgia diagnosis. Once this issue is clarified, the ALJ can determine what impact, if any, this has on his assessment of plaintiff's credibility.

///
///
///

---

[9] The Court may review the propriety of the Appeals Council's decision with respect to new evidence submitted to it. *See, e.g*, Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993)(reviewing the propriety of the Appeals Council's ruling when it considered, *inter alia*, additional materials, and concluded that "the ALJ's decision was proper and that the additional material failed to 'provide a basis for changing the hearing decision'"); Bates v. Sullivan, 894 F.2d 1059, 1063-64 (9th Cir. 1990)(reviewing the propriety of the Appeals Council's decision to reject the opinion of a psychiatric opinion submitted for the first time in connection with plaintiff's request for review); Martinez v. Astrue, 2009 U.S. Dist LEXIS 63453, *12 (C.D. Cal. 2009)(reviewing the Appeals Council's "conclusion that the additional evidence submitted by plaintiff [wa]s insufficient to warrant remanding").

**III. Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989) (remand appropriate to remedy defects in the record).

On remand, the ALJ must correct the above-mentioned deficiencies and errors. Specifically, the ALJ needs to consider Dr. Cheng's questionnaire and, to the extent necessary, conduct an appropriate inquiry to clarify any ambiguity surrounding plaintiff's fibromyalgia diagnosis. Additionally, in view of Dr. Cheng's retrospective fibromyalgia diagnosis, the ALJ also needs to reconsider his finding

14

regarding plaintiff's credibility and give clear and convincing reasons, if they exist, for finding plaintiff to be not credible. After correcting the above errors and deficiencies, the ALJ may need to reassess plaintiff's RFC, in which case, additional testimony from a vocational expert likely will be needed to determine what work, if any, plaintiff can perform.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: April 27, 2011

                                  */s/ Margaret A. Nagle*
                                  MARGARET A. NAGLE
                        UNITED STATES MAGISTRATE JUDGE